### JANUARY TERM, 1870.

---

## S. SELIGMAN & BROTHER *v.* SALVADOR ARMIJO.

COMMON CARRIER MAY SUE IN COMMON COUNTS.—A common carrier suing for freight, where it does not appear that the services were performed under a special agreement or agreement under seal, may declare in the common counts in assumpsit, and need not declare specially setting forth the place of receiving and the place of delivering the goods.

COMMON CARRIER, WHO IS.—An owner of a wagon train who, without any special agreement, sends his train to transport goods for reward for all who may employ him, and undertakes to carry the goods of a particular owner, assumes, with respect to such goods, the duties and liabilities of a common carrier.

EXCEPTION OF "UNAVOIDABLE ACCIDENTS" IN BILL OF LADING.—The usual exception of "unavoidable accidents" contained in a bill of lading signed by a common carrier does not limit or restrict his liability in any way.

LIABILITY OF FREIGHTER NOT LIMITED BY STATUTE, WHEN.—The act concerning freighters, approved February 1, 1866, has no effect to limit the liability of a freighter as a common carrier, where there is no agreement between the parties made in accordance with the provisions of the act.

DESTRUCTION OF GOODS BY UNITED STATES SOLDIERS DOES NOT RELIEVE CARRIER.—The liability of a common carrier for the safe delivery of goods is not relieved by showing that they were destroyed by an overwhelming force of United States soldiers under the command of an army officer, this not being a destruction by "public enemies."

APPEAL from the district court for the county of Santa Fe. The case appears from the opinion.

*R. H. Tompkins*, for the appellants.

*S. B. Elkins*, for the appellee.

By Court, PALEN, C. J.; JOHNSON, J., concurring:

The petition in this cause contains two counts in assumpsit, for the carriage, conveyance, and freighting of goods, wares, merchandise, and chattels. The defendants interposed a general demurrer to the petition on which judgment was given for the plaintiff in the district court, to which judgment the defendant excepted. The defendants then pleaded *non assumpsit*, and, specially, that the plaintiff was a common carrier to transport goods from Junction City, Kansas, to Santa Fe, New Mexico, and as such common carrier received the goods in question to transport from Junction City to Santa Fe. The plaintiff failed to deliver the goods in question, goods of the value of two thousand and sixty-nine dollars, being part of the goods for the freight of which this suit was brought, and the defendants claimed to set off the value of the goods not delivered against the plaintiff's claim.

Plaintiff replied to the special plea, that he was not indebted to the defendants as alleged by them. The cause was tried March 2, 1869, and the jury rendered a verdict in favor of the plaintiffs for one thousand two hundred and fifty-one dollars and sixteen cents, and the court rendered judgment for that sum and costs. Motions for a new trial and arrest of judgment were made by the defendants and overruled by the court. The defendants excepted to the decisions of the court overruling said motions.

The facts of the case, as gathered from the record, are as follows: In August, 1867, plaintiff, without any prior engagement for freight, sent his train to Junction City, Kansas, for the purpose of bringing freight to New Mexico, and obtained of Chick & Co., forwarders, of Junction City, the articles for freight specified in the bill of lading produced and proven in this cause, amounting to fourteen thousand eight hundred and fifty-eight pounds, including six barrels of liquor. He also had freight for several other persons in

New Mexico on the trip. The bill of lading, signed by plaintiff's wagon-master, specified the articles of the defendants, and that they were to be transported and delivered in good condition (unavoidable accidents excepted) to defendants at Santa Fe.

On the journey, the plaintiff's train traveled in company with two other trains. Shortly after passing Fort Dodge, on the Arkansas river, the trains were stopped by a lieutenant and fourteen or fifteen soldiers of the United States army, who demanded all the liquor in the trains. This demand was refused, when the liquor, including the six barrels belonging to the defendants, was taken by the soldiers and spilled on the ground. The force used was such that it could not be resisted by the plaintiff's wagon-master.

The reason given by one of the plaintiff's witnesses for the destruction of the liquor was, that the wagon-master of a train traveling in company with the plaintiff's train, had, on the day previous, sold liquor to the soldiers and some Indians at Fort Dodge. No liquor was sold from plaintiff's train. The goods, except the six barrels of liquor, were delivered to the defendants in good order. The liquor destroyed was worth two thousand one hundred dollars.

The court, among other instructions, gave the following to the jury: "That officers and soldiers of the United States army, who, without excuse or legal right, unlawfully take by force the property of citizens, and destroy it, are the king's enemies in every sense of the term; and if they believe from the evidence that said officers and soldiers unlawfully and wrongfully took this whisky and destroyed it, then in the opinion of the court it would be such an unavoidable accident as would excuse the freighter from liability to pay for the goods so taken from the train and destroyed by said troops." To which instructions of the court the defendants excepted.

The first question involved in the determination of this case arises upon the demurrer to the plaintiff's petition. On the argument, the petition was alleged to be defective, because it does not set forth the *termini* of the route, or the

places from which and at which the goods were to be taken and delivered.

If the nature of the plaintiff's claim is such that a recovery would be authorized under the common law counts, this objection fails. The petition contains the *indebitatus assumpsit* and *quantum meruit* counts, and there can be little doubt of the sufficiency of these counts in this suit. The rule is, that in respect to claims for work and labor, or other personal services, however special the argument, if not under seal, and the terms of it have been performed on the plaintiff's part, and the remuneration was in money, it is not necessary to declare specially, and the common indebtedness count is sufficient: 1 Chit. Pl. 380. It does not appear that the services for which this suit was brought were performed under a special agreement, and there is no pretense that there was an agreement under seal.

The judgment of the district court, in overruling the demurrer, must therefore be sustained.

The remaining questions raised on the record, and to be considered by this court, are:

1. Was the plaintiff a common carrier, and subject to the responsibilities and liabilities of common carriers, in respect to the goods carried for the defendants?

2. If a common carrier and subject to the responsibilities and liabilities of common carriers, as respects these goods, was he relieved of such responsibilities or liabilities by agreement of the parties, or by operation of the laws of the territory, or by the nature of the force by which the liquor was destroyed?

The record shows that the plaintiff, without any prior contract for freight, sent his train to Junction City, to freight such goods as he could procure, and from any person who might employ him; that he did carry freight for such persons as employed him, and no question or doubt as to his liability as a common carrier, in respect to the goods in question, would appear to have arisen on the trial of the cause in the district court.

The instructions given to the jury by the judge (to which

the plaintiff took no exceptions) treat the case throughout as a suit by a common carrier for his services, and appear to consider the plaintiff subject to the duties, responsibilities, and liabilities of a common carrier, but relieved therefrom by the nature of the force employed in the destruction of the liquor.

The plaintiff having sent his train to Junction City without any special agreement, for freight, to transport for reward the goods of such as might employ him, and having undertaken to carry goods for the defendants and others, thereby assumed the duties, obligations, and liabilities of a common carrier, in respect to the goods carried by him: Redfield on Carriers, p. 16, secs. 20, 27, 28, 37. Was the plaintiff relieved from these obligations and liabilities by agreement of the parties ? To establish such release the plaintiff relies upon the exception of unavoidable accidents contained in the bill of lading. This is the common and usual form of exception in bills of lading signed by common carriers, and has never, so far as I can ascertain, been held to limit or restrict the responsibilities or liabilities which the law imposes upon common carriers.

The exception in the bill of lading does not, in my opinion, relieve the plaintiff from his liability for the loss or destruction of the liquor. Does the law of New Mexico concerning freighters, approved February 1, 1866 (Laws of New Mexico, 1865-6, 226), modify, restrict, or alter the liability of the plaintiff in this suit ?

This law is difficult of comprehension and almost incapable of construction. The object of the law appears to have been to relieve freighters of the common law liabilities attaching to common carriers, or rather to enable them to relieve themselves of such liabilities by special agreement, written.or verbal. The best consideration I have been able to give this law leads me to the conclusion that it does not affect the liabilities of carriers in cases where no agreement is made in accordance with the provisions of the law. No such agreement was made between the parties in this case, and the law is therefore not applicable to them in this suit.

It remains to consider whether the nature of the force

by which the liquor was destroyed was such as to relieve the plaintiff of his liabilities as a common carrier. Were this question new and open, I should be inclined to decide that it was, but the rule that a common carrier is liable for all losses that occur while the goods are in his possession, not caused by the act of God or the public enemies of the government, has been too long established, and too generally recognized by the courts of this and other countries, to be annulled or set aside by this court: 2 Kent Com. 597, 609; Starkie Ev. 334–338; Story on Bail. 489–491; Jones on Bail. 104–107; Redfield on Carriers, 19.

If the conclusion thus reached is correct, the instructions of the judge to the jury, that the destruction of the liquor by an officer and soldiers of the government of the United States, relieved the plaintiff of his liability for the same, was erroneous.

The judgment of the district court should be reversed, and a new trial granted, with costs of appeal.